Dear Mr. Wilkinson:
This office is in receipt of your request for an opinion of the Attorney General in regard to use of public meeting rooms in the Parish libraries and various public buildings. The Jefferson Parish Council adopted a resolution in 1998 which prohibits any political activity in these facilities and reads as follows:
 Political activities are not allowed in any Jefferson Parish meeting facility. Political activities include:
 a. Any activities whose purpose is to support or oppose any political party.
 b. Any activities whose purpose is to support or oppose any candidate for public office.
 c. Any activities requiring an individual or group to file a campaign financial disclosure report under state or federal law, or
 d. Any activities requiring an individual or group to file a lobbying report under state or federal law.
 The provisions of this section, however, will not prohibit any non-profit group, as defined by the Internal Revenue Regulations, from using a Jefferson Parish meeting facility to hold public forums regarding the qualifications of political candidates or ballot referendums when such forums provide equal access to all candidates and issues that are subject of the forum; each non-profit group shall file an affidavit with the application for use of the facility verifying that they have complied with the equal access requirements of this section.
You indicate the Legislative Auditor admonished the Parish for being lax in enforcing this policy by allegedly allowing a partisan political organization to use the meeting room in contravention of La. Const. Art11, § 4, and R.S. 18:1465(A), and further criticized the Parish's practice of waiving fees for the use of these facilities by any group as being in contravention of La. Const. Art 7, § 14. Accordingly, you state the Parish has refused to waive fees for any group, civic, non-profit, and the like and has further refused to allow any quasi-political group, such as League of Women Voters and the John Birch Society from using Parish meeting facilities.
You relate as a result of these actions toward various groups that had heretofore been allowed to use these facilities, these groups have now complained in regard to the Parish allowing Congressman David Vitter's use of meeting rooms for "town hall" meetings. At the meetings governmental issues and other issues affecting the citizens of Jefferson Parish were discussed, but the Congressman did not engage in political activity or campaign activity.
You further note that Senator Ken Hollis has requested the use of a parish meeting room to convene a meeting of a Louisiana Senate committee which oversees the operations of the Lake Pontchartrain Causeway.
In light of these observations, you request an opinion on the following issues:
 1) Does the use of a parish facility by either a federal, state, or local governmental official to conduct a meeting with constituents to discuss governmental actions contravene the provisions of LSA Const. Art. 11 § 4 and LSA R.S. 18:1465(A) or any other provision of law?
 2) Since such meetings by a federal, state, or local governmental official are for the benefit of the citizens of Jefferson Parish, does the failure to impose or collect a fee from the official for the use of such facility contravene LSA Art. 7 § 14 or any other provision of law?
 3) If an organization does not support candidates but does espouse positions either for or against propositions and issues, e.g. the John Birch Society, the ACLU or the League of Women Voters, would the use of public facilities by such groups, even for a fee, contravene the provisions of La. Const. Art. 11 § 4 and LSA R.S. 18:1465(A) or any other provision of law?
 4) If such an organization desired to conduct either (i) a regular business meeting or (ii) a candidate forum with all candidates being invited but no endorsement being made, would the use of a public facilities by such groups, even for a fee, contravene the provisions of LSA Const. Art 11 § 4 and LSA R.S. 18:1465(A) or any other provision of law?
We note that R.S. 18:1465(A) provides as follows:
 A. No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or to be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot.
This office has repeatedly recognized that in accordance with La. Const. Art. 7, § 14 that things of value of the state or any political subdivision "shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private". Additionally, LA. Const. Art 11, § 4 provides that no public funds shall be used to urge any elector to vote for or against any candidate or proposition; and similarly R.S. 18:1465 provides that no public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization.
In Atty. Gen. Op. 91-216 in regard to the use of the Natchitoches Coliseum for a campaign testimonial dinner, this office concluded use of a public building for no fee would amount to the use of public funds and, therefore, would be in violation of R.S. 18:1465. However, it was observed, "If use of a public building is being paid for by private funds, then it would not be unlawful to use such building to urge any elector to vote for or against any candidate * * *."
Also, in Atty. Gen. Op. 94-227 this office related that R.S. 18:1465
was designed to prevent public officials from using public funds to support or oppose candidates, parties or propositions. It was concluded, "Therefore, it is the opinion of this office that the use of the St. Martinville City Hall building for political purposes (e.g., organizing and/or planning political campaigns, etc.) is contrary to public policy and constitutes a violation of Article 11, Section 3, and Article 7, Section 14 of the Louisiana Constitution."
Similarly, in accordance with the statutory and constitutional provisions, this office stated in Atty. Gen. Op. 77-790 that the Town of Bunkie was prohibited from making a gratuitous donation to the Bunkie Chamber of Commerce, and concluded by providing the organization free office space, the Town would be making such a donation. However, it was noted that earlier opinions had reasoned that public bodies may provide benefits to private organizations when such organizations render public services commensurate in value with the contribution conferred by the public body. It was then stated, "Accordingly, we conclude that office space may be provided for the Bunkie Chamber of Commerce if tangible service to the town are rendered, and if said services are deemed equivalent in value with the rental cost of the office space."
Pertinent to your inquiry, it is significant to note that wherein use of public funds are prohibited to urge votes for or against any candidate or proposition, consideration must be given to that portion of R.S. 18:1465
and La. Const. Art. 11, § 4 which provides, "This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot."
This office has recognized that public funds or property may be used for public purposes when in the public interest, but not for a purely private purpose or one which predominantly benefits a private group as distinguished from the public at large. In Atty. Gen. Op. 97-136 this office stated the statutes which provide civil and criminal penalties for use of public funds are punitive and must be strictly construed, but the exception which allows public bodies to disseminate factual information must be applied broadly. Thus, this office has recognized that public funds or property may be used for public purposes when in the public interest, but not for a purely private purpose or one which predominantly benefits a private group as distinguished from the public at large.
Therefore, in response to your first two questions we would conclude when the information disseminated by the public official is of a value to the community equivalent to the use of the public space without simply espousing a private interest of the organization there would be no prohibition in law to such use of the facility. The determination of this is a factual conclusion which this office would not be in a position to render.
In response to your third and fourth questions relative to whether use of a public facility by an organization that espouses a position on an issue or proposition would contravene the provisions of La. Const. Art11, § 4 and R.S. 18:1465(A), we would find no violation when there is a sufficient fee paid for the use of a public building inasmuch as there would be no use of public funds. As stated in Atty. Gen. Op. 91-216, "If the use of a public building is being paid for by private funds, then it would not be unlawful to use such building to urge any elector to vote for or against any candidate * * *." However, use of a public building for no fee would amount to the use of public funds, and therefore, would be in violation of R.S. 18:1465.
Of course, use of a public facility without payment of a fee may not occur where such use predominantly benefits the interests of a private group. Use of a public facility for a regular business meeting of an organization or a forum for members that espouse only limited views on particular issues would not be for the benefit of the public at large. However, a forum of all candidates open to the public to disseminate information would not be a violation of the Louisiana Constitution or statutes as long as not used solely to urge a vote for or against any candidate or proposition, but open for a discussion in the public interest rather than purely private purposes. As observed by this office in Atty. Gen. Op. 90-126A the information complied and communicated through the use of a public funds, herein a public facility, must be free from the presence of all advocacy and argument. It must be purely factual and suggest no position for or against an issue.
Therefore, organizations that espouse positions on political issues could use a public facility for a fee commensurate with the value of the use of such property, but without paying a reasonable fee, there would be a violation of the provisions of law that prohibit a donation or loan of public funds as set forth in La. Const. Art 11, § 4 and R.S. 18:1465(A) unless used as strictly provided in the resolution. As stated therein Apolitical activities are not allowed in any Jefferson Parish meeting facility , but the provision does not prohibit any non-profit group using a facility "to hold public forums * * * when such forums provide equalaccess to all candidates and issues that are subject of the forum * * *." (Emphasis added.) This exception for equal access obviously falls within the provision of law allowing use of a public building for dissemination of factual information, and thus, not for a purely private purpose. As stated in Atty. Gen. Op. 90-126A with reliance upon Godwinv. East Baton Rouge Parish School Board, 372 So.2d 1060 (La.App. 1st Cir. 1972), "the line between legality and illegality is that between advocacy of only one side of the public issue through use of public funds and the neutral statement of facts pertinent to all sides of an issue and presented without bias."
Therefore, an organization that espouses only one side of a public issue would be denied use of public funds, or in the instant case public facilities, unless there was payment of a reasonable fee, or there must be equal access to all views on an issue to insure the legality of the use of a public facility.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: _____________________________ BARBARA B. RUTLEDGE Assistant Attorney General
RPI/bbr
Date Released: August 28, 2002